**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NICHOLAS WEBB & <br> THAD BEVERSDORF, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL FRAWLEY, <br><br> Defendant. <br><br> v. <br><br> JEFFERIES LLC, <br><br> Respondent in Discovery. | No. 1:15-cv-06406 <br><br> Judge Samuel Der-Yeghiayan <br> Magistrate Judge Maria Valdez |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO**
**COMPEL ARBITRATION AND STAY LITIGATION**

**INTRODUCTION**

Defendant Michael Frawley ("Frawley") moves to stay this action and compel Plaintiffs Nicholas Webb ("Webb") and Thad Beversdorf ("Beversdorf") to arbitrate their claims before the Financial Industry Regulatory Authority ("FINRA"). Arbitration is mandatory under the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA") and compelled in this case by FINRA Rule 13200, which requires arbitration of any "dispute [that] arises out of the business activities of a member or an associated person and is between or among: Members, Members and Associated Persons; or Associated Persons."

Plaintiffs' claims fall squarely within FINRA's mandatory arbitration rules. Plaintiffs' allegations focus entirely on their employment relationship with Jefferies, LLC ("Jefferies"), a long-time FINRA Member, and their direct supervisor at Jefferies, Defendant Frawley. Plaintiffs Webb and Beversdorf and Defendant Frawley are each "Associated Persons" as that term is defined by FINRA, and their dispute undeniably arises out of their business and employment with Jefferies. As such, the Court should stay these proceedings and compel Plaintiffs to arbitrate this dispute before a FINRA arbitration panel.

**BACKGROUND**

**A. Procedural History**

Plaintiffs filed the instant action on June 16, 2015 in the Circuit Court of Cook County, Illinois, asserting claims against Frawley for tortious interference with their employment contracts with Jefferies and for fraud. Frawley subsequently removed the action to this Court. The parties have not filed any other pleadings with this Court and have not engaged in any discovery.

1

### B. The Parties

#### 1. Thad Beversdorf & Nicholas Webb

Plaintiffs Beversdorf and Webb have been employed in the securities industry and both claim to have expertise in base, ferrous and precious metals trading. (Compl. ¶¶ 1-2, ECF No. 1-1). They joined Jefferies in June 2012. (Compl. ¶¶ 5-6, 20.) Both Beversdorf and Webb signed written employment contracts with Jefferies. (Ex. 1; Ex 2.) While at Jefferies, Beversdorf and Webb reported to Defendant Frawley, who headed Jefferies' metals trading business. (Compl. ¶ 37.) In October 2013, Beversdorf and Webb were terminated by Jefferies for—as they allege—"poor performance and lack of production." (Compl. ¶¶ 61-62.)

#### 2. Michael Frawley

At or around the same time Beversdorf and Webb moved to Jefferies, Defendant Frawley also accepted a position at Jefferies as the Vice Chairman and Global Head of Metals and Listed Products. (Compl. ¶ 25.) He too is alleged to have been "employed in the securities industry at all relevant times" with "expertise in base, ferrous and precious metals trading." (Compl. ¶ 3.)

#### 3. Jefferies, LLC

Jefferies has been a registered Member with FINRA since 1963. (Ex. 3, at 9.) Plaintiffs name Jefferies not as a Defendant, but only as a respondent in discovery pursuant to 735 ILCS 5/2-402, alleging that "Jefferies has information essential to the determination of who should properly be named as additional defendants in the action . . . . [and] who may be complicit with Frawley in the frauds and torts committed upon Webb and Beversdorf." (Compl. ¶¶ 66-67.) As a mere respondent in discovery under Illinois civil procedure, Jefferies is not technically a party to this federal court proceeding, *see Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482,

1485 n.3 (7th Cir. 1996), and Plaintiffs do not seek recovery from Jefferies. (*See* Compl. ¶¶ 65-67.)

### 4. Plaintiffs' Allegations[1]

Each of Plaintiffs' claims arises out of their respective terminations from their positions at Jefferies in October 2013. Specifically, Plaintiffs allege that they were recruited by Frawley to help build Jefferies' metals trading franchise. (Compl. ¶ 22.) The success of the metals trading business at Jefferies, however, was allegedly hamstrung by internal accounting policies that assigned additional expenses to the metals trading business. (Compl. ¶ 30-32.) Plaintiffs allege that these policies made the metals units at Jefferies appear less profitable than other groups, and the metals group struggled to deliver on expectations from the time they were hired. (Compl. ¶¶ 30, 36.)

In or around May 2013, Jefferies management allegedly informed Frawley that the firm would no longer pursue iron ore trading business, yet Frawley allegedly continued to direct Plaintiffs to seek such business for several months thereafter in an effort to save the metals business. (Compl. ¶ 37.) Plaintiffs allege that during this time they forewent other more profitable work they could have been doing for Jefferies. (*E.g.*, Compl. ¶ 72.)

On October 21, 2013, Beversdorf and Webb were both terminated by Jefferies. (Compl. ¶ 61.) Based on Frawley's alleged instructions to them to continue pursuing iron ore business, Plaintiffs blame Frawley for their termination, which Jefferies allegedly attributed to "poor performance and lack of production." (Compl. ¶ 61-62.) Their two-count complaint seeks recovery from Frawley under theories of tortious interference with contract (*i.e.*, their

---

[1] The following alleged facts are taken from Plaintiffs' complaint. Frawley does not admit or adopt these allegations.

employment contracts with Jefferies, Compl. ¶¶ 65-69) and fraud, (for Frawley's alleged representations to Plaintiffs that Jefferies wanted them to seek iron ore trades, Compl. ¶¶ 64-73).

## ARGUMENT

### A. Applicable Law

Sections 3 and 4 of the FAA require a court to stay proceedings and compel arbitration upon the motion of a party to a valid arbitration agreement. 9 U.S.C. §§ 3, 4. The Supreme Court has stressed that under the FAA there is a strong presumption in favor of arbitration and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). In responding to a motion to compel arbitration, the non-moving party cannot rest on pleadings alone but "must identify *specific* evidence in the record demonstrating a genuine issue of material fact" as to his obligation to arbitrate. *Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1001 (N.D. Ill. 2013).

A motion to compel arbitration should be granted upon a showing of: (1) an agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to arbitrate. *Estabrook v. Piper Jaffray Companies*, 492 F. Supp. 2d 922, 925 (N.D. Ill. 2007), *citing Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Where these prerequisites are met, the FAA allows no room for the exercise of discretion and a motion to compel arbitration must be granted. 9 U.S.C. §§ 3, 4; *see also Traderight Securities, Inc. v. Kirschman*, No. 10 C 2042, 2011 WL 614090, at *2 (N.D. Ill. Feb. 15, 2011), *citing Sharif v. Wellness Int'l Network, Ltd.*, 375 F.3d 720, 726 (7th Cir. 2004).[2] "[T]he proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to

---

[2] All unreported cases are included as Exhibit 6.

4

dismiss outright." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008).

In this case, a valid arbitration agreement exists under FINRA Rule 13200, which requires all Associated Persons, such as Beversdorf, Webb and Frawley, to arbitrate their disputes as a matter of law. Plaintiffs' dispute falls squarely within the scope of the Rule because it arises out of their employment with and termination from Jefferies, a FINRA Member. Furthermore, Plaintiffs commenced this suit in the Circuit Court of Cook County, thereby evidencing their refusal to arbitrate. Thus, all of the prerequisites under the FAA are met and the Court should stay these proceedings and compel Plaintiffs to arbitrate.

### B. FINRA Rules Require that Beversdorf and Webb Arbitrate This Dispute.

#### 1. The Parties Are Associated Persons Required to Arbitrate Pursuant to FINRA Rule 13200.

FINRA's arbitration rules constitute an "agreement in writing" under the FAA for parties within their reach. *See Wash. Square Sec., Inc. v. Aune*, 385 F.3d 432, 435 (4th Cir. 2004); *Kidder, Peabody & Co. v. Zinsmeyer Trusts P'ship*, 41 F.3d 861, 863–64 (2d Cir. 1994). These rules require that all disputes between or among Members, Members and Associated Persons, or Associated Persons must be arbitrated if those disputes arise out of the business activities of a Member or an Associated Person. *See* FINRA Rule 13200(a) (Ex. 4). FINRA Rules define the term "Member" as any broker or dealer admitted to membership in FINRA. *See* FINRA Rule 13100(o) (Ex. 5). The Rules define an "Associated Person" as a "person associated with a Member," *i.e.*, a person who is registered under FINRA Rules or "a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with FINRA." *See* FINRA Rule 13100(a), (r) (Ex. 5). Importantly, a person who

5

was formerly associated with a Member is still considered an Associated Person under FINRA Rules. *See* FINRA Rule 13100(r) (Ex. 5). *See also Lorbietzki v. Merril Lynch, Pierce, Fenner & Smith, Inc.*, No. 2:11-cv-01585-RLH-PAL, 2011 WL 855354, *3 (D. Nev. Mar. 9, 2011).

Jefferies is clearly a FINRA Member (*see* Ex. 3, at 9), and Beversdorf, Webb and Frawley are each Associated Persons under FINRA Rules. Beversdorf, Webb and Frawley were at all relevant times securities professionals, (Compl. ¶¶ 1-3), who were employed (and thereby controlled) by Jefferies, thus falling within the definition of "Person Associated with a Member" under FINRA Rule 13100(r)(2). (Ex. 5.)

### 2. Plaintiffs' Dispute Arises Out of the Business Activities of a Member or Associated Person.

The scope of FINRA Rule 13200 is very broad, reaching any "dispute aris[ing] out of the business activities of a member or an associated person." (Ex. 4). Such broad provisions "have expansive reach and create a presumption of arbitrability." *Millis v. Morgan Stanley & Co., Inc.*, No. 2008 WL 5095917, at *6 (S.D. Ill. Dec. 1, 2008) (examining the scope of FINRA arbitration rules). Courts considering the issue have concluded that allegations relating to the hiring, employment, compensation and/or termination of an Associated Person arise from a Member firm's business activities and therefore implicate FINRA Rule 13200(a). *See, e.g.*, *Lorbietzki*, 2011 WL 855354 at *4; *Osborne v. Wells Fargo Advisors*, No. 2:11-CV-691-FTM-DNF, 2012 WL 2952533, at *3–4 (M.D. Fla. July 19, 2012) (disputes arising out of an Associated Person's employment relationship with a Member implicate FINRA Rule 13200(a)).

Plaintiffs' allegations against Frawley arise out of the business activities of Jefferies— such as Plaintiffs efforts to secure metals trading business on behalf of Jefferies, Frawley's alleged representations that Jefferies wanted Plaintiffs to seek iron ore trades, and the eventual termination of Plaintiffs' employment contracts with Jefferies due to their "poor performance

6

and lack of production" with respect to their trading activities. (Compl. ¶ 61-62.) Indeed, the damages Plaintiffs seek arise from the commissions each might have earned had he pursued other transactions that were profitable to Jefferies as well as losses resulting from the termination of each of their employment contracts with Jefferies. (Compl. ¶¶ 69, 72.) Because Plaintiffs' alleged claims arise out of Jefferies' business activities, and because all of the parties are Associated Persons, FINRA Rules compel Plaintiffs to submit their claims to arbitration.

### 3. Plaintiffs Have Refused to Arbitrate.

Finally, Plaintiffs have obviously refused to arbitrate their claims against Frawley by initiating these proceedings. Courts agree that this act alone is sufficient to satisfy the "refusal" element under the FAA. *See, e.g.*, *Armbrister v. Pushpin Holdings, LLC*, 896 F. Supp. 2d 746, 753–54 (N.D. Ill. 2012) (recognizing that the commencement of litigation evidences a refusal to arbitrate).

### CONCLUSION

For the reasons stated above, Frawley respectfully requests that the Court grant his Motion to Compel Arbitration and Stay Litigation, and compel Plaintiffs Beversdorf and Webb to arbitrate all claims asserted in the Complaint.

DATED: July 23, 2015                    Respectfully submitted,

/s/ J Matthew Haws

Arthur W. Hahn
Dawn M. Canty
J Matthew Haws
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661
(312) 902-5200
*Attorneys for Defendant Michael Frawley*

7

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of July 2015, I did cause a copy of the foregoing *Defendant's Memorandum In Support of Motion to Compel Arbitration and Stay Litigation* to be served, by U.S. Mail, upon the following counsel of record:

>Cornelius E. McKnight
>Nathan P. Karlsgodt
>MCKNIGHT, KITZINGER & PRAVDIC, LLC
>117 North Jefferson Street, Suite 301
>Chicago, Illinois 60661
>312.463.9400
>nmcknight@mkplawyers.com

>/s/ J Matthew Haws
>One of Defendant's Attorneys