IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS WEBB & <br> THAD BEVERSDORF, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL FRAWLEY, <br><br> Defendant. | No. 1:15-cv-06406 <br><br> Judge Samuel Der-Yeghiayan <br> Magistrate Judge Maria Valdez |

**DEFENDANT FRAWLEY'S MEMORANDUM IN SUPPORT OF HIS
MOTION FOR PROTECTIVE ORDER**

Pursuant to Federal Rules of Civil Procedure 26 and 45, Defendant Michael Frawley ("Frawley") respectfully moves this Court for a protective order to prevent the premature pursuit of third-party discovery by Plaintiffs Nicholas Webb and Thad Beversdorf ("Plaintiffs").

**Introduction**

In the midst of their pursuit of a FINRA arbitration against their prior employer, Jefferies LLC ("Jefferies"), arising from the termination of their employment, Plaintiffs elected to file a separate lawsuit against their supervisor, Michael Frawley, for his purported role in their dismissal. When devising their claims against Frawley for fraud and tortious interference, Plaintiffs must necessarily have considered why they believe these claims are unique (and thus distinct from their claims against Jefferies), and the extent of their damages arising from Frawley's acts. At a minimum, Plaintiffs blame Frawley for their termination from Jefferies, where Beversdorf earned an annualized salary of $250,000 and Webb earned $175,000. Thus, the loss of even a few months of salary arising from Frawley's alleged tortious interference with their employment contracts satisfies the $75,000 jurisdictional threshold. Add to this their

alleged lost bonuses, commissions, injury to business reputation and attorney's fees, and the alleged damages handily meet the jurisdictional minimum. Of course, discovery and trial ultimately will reveal that Plaintiffs' claims are invalid and that they suffered no damages, but as the pleadings stand, based on Plaintiffs' allegations, each Plaintiff seeks in excess of $75,000 in damages.

Plaintiffs do not dispute this. Instead, they refrain from taking any position at all, erroneously claiming, contrary to Supreme Court precedent, that Frawley must submit with his Notice of Removal evidence sufficient to prove that each Plaintiff seeks in excess of $75,000 in damages. Before deciding the Motion to Remand, the Court granted the parties leave to take limited discovery with respect to the amount in controversy. Defendant Frawley served targeted Requests to Admit and Interrogatories on Plaintiffs, seeking an explanation of, and factual support for, Plaintiffs' damages claims. Plaintiffs, on the other hand, took advantage of the Order to issue subpoenas to third parties, Kassey Oulhadj, Société Generalé d/b/a Newedge Group, SA ("Newedge"), and Jefferies, seeking both deposition and broad document discovery. The discovery Plaintiffs seek from these third parties is wholly irrelevant. For instance, even Plaintiffs' requests relating to Jefferies' bonus payments could not be used to support remand because Plaintiffs were paid no bonuses while employed by Jefferies. Thus, discovery into bonus payments could only provide evidence to support greater alleged damages (more than $0), not lesser-alleged damages, as Plaintiffs must argue for remand. In truth, these requests have nothing to do with the amount in controversy. Rather, Plaintiffs seek this information solely for purposes of their ongoing FINRA arbitration against Jefferies.

Because this discovery is irrelevant and improper, the Court should enter a protective order barring Plaintiffs from pursuing these third-party subpoenas during the pendency of

Plaintiffs' Motion to Remand. It is equally unfair to burden Defendant Frawley with the expense of participating in full damages discovery at this stage of the proceedings, before the Court has ruled on his pending Motion to Compel Arbitration.

## Background

Plaintiffs Nicholas Webb and Thad Beversdorf assert claims arising from their employment as sales executives within the base metals trading group at Jefferies. (*See* Dkt. # 1-1 ("Compl.").) Plaintiffs allege that in May 2013, their supervisor, Frawley, encouraged them to pursue certain iron ore trades on behalf of Jefferies despite Jefferies' decision to discontinue trading in the iron ore market. (*Id*. at ¶¶ 41–45.[1]) As a result of this alleged "fraud" and "tortious interference," Plaintiffs allege that they both were fired on October 21, 2013. (*Id.* at ¶¶ 61, 69.) Each Plaintiff alleges that loss of his job and injury to his business reputation resulted in damages "*in excess* of $50,000." (*Id*. at ¶ 69 (emphasis added).)

On July 22, 2015, Frawley timely removed this action from the Circuit Court of Cook County, Illinois, on the basis of diversity jurisdiction, alleging that the amount in controversy exceeds $75,000. (*See* Dkt. # 1.) Frawley's allegation as to the amount in controversy is entirely plausible because Plaintiffs were each well-paid, salaried employees at Jefferies, earning $250,000 and $175,000 per year respectively, and each Plaintiff seeks additional categories of damages, including attorneys' fees. (*See* Dkt. # 8-1, 8-2.) On July 23, 2015, Frawley moved the Court to compel Plaintiffs to arbitrate their claims before the Financial Industry Regulatory Authority ("FINRA"). (Dkt. # 6 ("Motion to Compel Arbitration").) At the time Plaintiffs filed

---

[1] The following alleged facts are taken from Plaintiffs' Complaint. Frawley does not admit or adopt these allegations.

their Complaint against Frawley, Plaintiffs and Jefferies were already parties to a FINRA arbitration arising from Plaintiffs' employment with Jefferies.

During the pendency of Frawley's Motion to Compel Arbitration, Plaintiffs filed a Motion to Remand. (Dkt. # 15.) Plaintiffs studiously avoid admitting or denying that their claims against Frawley exceed $75,000, instead arguing that Frawley's Notice of Removal is deficient because it does not incorporate evidence of Plaintiffs' alleged damages. (*Id*. at ¶ 19.) Plaintiffs are wrong, however. Frawley plausibly alleged that Plaintiffs' claims exceeded $75,000 in his Notice of Removal, so no evidentiary showing is required. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014) (a notice of removal need not incorporate any evidence of the amount in controversy); (Dkt. 1 ¶ 8.)

At an October 29, 2015 hearing on Plaintiffs' Motion to Remand, the Court granted the parties leave to take "limited discovery as it relates to jurisdiction/amount in controversy." (Dkt. # 23.) The next day, on October 30, 2015, Plaintiffs issued three subpoenas: two subpoenas for document production to Jefferies and Newedge (Plaintiffs' employer before they moved to Jefferies) and one for deposition testimony and document production to Ms. Oulhadj, a former Jefferies and Newedge employee. (*See* Exhibits 1–3.) Plaintiffs' subpoenas seek documents and testimony relating to matters which are largely irrelevant to their damages in this case. Rather, Plaintiffs' subpoenas are targeted to issues relating to their FINRA proceeding against Jefferies, including Jefferies' calculation of bonuses as well as settlements and payments to other employees.

In contrast, Defendant Frawley has served narrow discovery requests on Plaintiffs. Frawley's requests (i) seek to discover the factual basis for Plaintiffs' allegations that they were damaged in an amount in excess of $50,000 for each of their claims, and (ii) ask Plaintiffs to

4

state whether they contest that the amount in controversy exceeds $75,000. (*See* Exhibit 4.) Plaintiffs should not need any discovery to respond, as each request is limited to the information available to Plaintiffs at the time they filed their Complaint. As the masters of their Complaint, Plaintiffs must have considered the magnitude of damages they seek when including a prayer for relief for in excess of $50,000 for each cause of action. To the extent Plaintiffs need any discovery at all as to the amount in controversy, it should be directed at the basis for Defendant Frawley's allegation that the amount in controversy exceeds $75,000.

### Legal Standard

District courts enjoy "broad discretion" in controlling discovery. *Patterson v. Avery Dennison Cor*p., 281 F.3d 676, 681 (7th Cir. 2002). Pursuant to Rule 26(c)(1)(A) of the Federal Rules, this court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including (A) forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(A); *see also Johnson v. Jung*, 242 F.R.D. 481, 483 (N.D. Ill. 2007). "In determining whether there is good cause for a protective order, the court must balance the interests involved." *Hobley v. Burge*, 225 F.R.D. 221, 224 (N.D. Ill. 2004).

### Argument

**A. Third-party Discovery Was Neither Authorized Nor Contemplated by the Court's Order Permitting Limited Discovery.**

At this stage of the proceedings, neither Plaintiffs nor Defendant need establish with any precision the amount of damages Plaintiffs seek. The issue before the Court is "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe a successful plaintiff." *Newport v. Dell, Inc*., 2008 WL 2705364, at 7 (D. Ariz. July 2, 2008). As such, district courts routinely control the scope and methods used by the parties in the interests of

judicial economy and limit discovery to "underlying *facts* showing only that is more likely than not that the amount in controversy" is met, "[not] extensive business records to prove or disprove liability and/or damages." *Cram v. Elec. Data Sys. Corp.*, 2007 WL 2904250 (S.D. Cal. Oct. 3, 2007) (emphasis in original) (limiting jurisdictional discovery to interrogatories only in the interest of judicial economy and to lessen the burden on the parties).

Likewise here, the Court's October 29, 2015 Order did not authorize or contemplate third-party discovery because such discovery is unnecessary to determine the amount in controversy. Plaintiffs themselves, as the masters of their own Complaint, must know if they seek in excess of $75,000 based on the facts at the time of removal. Even if Plaintiffs cannot precisely calculate their damages, they must have had sufficient information to determine the magnitude of their damages when filing a Complaint against Defendant Frawley and praying for relief in excess of $50,000. *See* Ill. Sup. Ct. R. 137 (requiring all averments in the complaint to be well grounded in fact after reasonable inquiry). In fact, Plaintiffs had letter agreements with Jefferies that set forth their annualized salaries and other compensation terms and have been embroiled in a FINRA arbitration with Jefferies relating to their employment for the past two years. It strains credulity to think that Plaintiffs would need any discovery, let alone third-party discovery, to determine whether, at the time of removal, their claimed damages exceeded $75,000.

Third-party discovery would also be a significant waste of resources. The alleged damages are well known to the Plaintiffs, not limited by statute, and certainly possible, if not likely, to exceed $75,000. The facts underlying the amount in controversy thus can be established if Plaintiffs simply admit or deny that each seeks damages in excess of $75,000.

### B. A Protective Order Should Be Entered to Prevent Plaintiffs From Seeking Discovery of Information Unrelated the Amount in Controversy.

At this stage, a protective order is necessary to prevent Plaintiffs from prematurely seeking third-party discovery of matters unrelated to the amount in controversy and thereby imposing an undue burden on Defendant Frawley and the targets of the subpoenas. *See, e.g., Builders Assoc. of Greater Chi. v. City of Chi.*, 215 F.R.D. 550, 554 (N.D. Ill. 2003) ("A subpoena is obviously unduly burdensome if the information is wholly irrelevant"). Not only are Plaintiffs' subpoenas grossly overbroad, but they were issued for the improper purpose of obtaining discovery in support of Plaintiffs' FINRA arbitration against Jefferies.

Plaintiffs seek discovery of a multitude of topics that have little or nothing to do with the amount in controversy. For example, Plaintiffs seek copies of confidential settlement agreements entered into between Jefferies and Newedge relating to an unrelated FINRA arbitration filed by Newedge against Jefferies in 2012. (Exhibit 1, Ex. A.) As indicated by the Request itself, that FINRA arbitration arose out of an alleged "raiding of Newedge employees," which has no bearing on this case, least of all the targeted issue upon which discovery has been allowed. (Exhibit 1, Request 10; Exhibit 3, Request 3.) Similarly, Plaintiffs seek the production of "all separation, severance and termination agreements of any persons who had been employed by Newedge and were later employed by Jeffries, LLC, or its subsidiaries" from "January 1, 2011 to the present." (Exhibit 1, Request 8.) These confidential settlements with unrelated third parties have no relevance whatsoever to Plaintiffs' claims against Frawley, let alone the amount in controversy in their Complaint against Frawley at the time of removal. Further, Plaintiffs can offer no justification for their subpoena to depose a third-party witness.

Plaintiffs wholesale disregard of the limits imposed by the Court's October 29, 2015 Order is further illustrated by the breathtaking scope of Plaintiffs' other requests. Plaintiffs ask

7

Jefferies and Ms. Oulhadj to produce essentially every document, communication, payment, accounting and policy pertaining to the "Quarterly Base Metals Bonus Pool" from "January 1, 2011 to present." (*See* Exhibit 1, Requests 1-6, 9; Exhibit 2, Requests 1-8.) Plaintiffs also seek every document and communication pertaining to Jefferies' accounting of "Capital Charges," "Divisional Support Allocations," and "Corporate Allocations" to the Base Metals Desk from January 1, 2011 to the present.[2] (*See id.*) Even if these documents had any relevance to the substance of Plaintiffs' claims that Frawley caused them to lose their jobs, which they do not, they certainly do not have any bearing on the value of Plaintiffs' claims against Frawley. To the contrary, by their own allegations, Frawley's alleged misdeeds did not occur until May 31, 2013, just a few months before Plaintiffs were fired from Jefferies on October 21, 2013. (Compl. ¶¶ 43, 61.) Thus, any information regarding Jefferies' bonus pool prior to that date is irrelevant to Plaintiffs' damages claims against Frawley

The purpose behind Plaintiffs' third-party subpoenas is both transparent and improper. Plaintiffs are presently engaged in a FINRA arbitration against Jefferies in which they claim that Jefferies allegedly breached their employment contracts by improperly allocating certain expenses to the bonus pool. Plaintiffs are attempting to use the limited discovery authorized in this action as a means to obtain discovery from Jefferies and former Jefferies' employees for use in their arbitration proceedings against Jefferies. Indeed, the witness subpoenaed by Plaintiffs, Ms. Oulhadj, can shed no light on whether Plaintiffs' allegations against Mr. Frawley exceed $75,000 in value, but she is a potential witness in the arbitration Plaintiffs are pursuing against Jefferies. Likewise, Plaintiffs' discovery requests relating to the bonus pool are targeted at their FINRA claims regarding Jefferies' purported miscalculation of the pool and discovering whether

---

[2] Notably, Plaintiffs were not even hired at Jefferies until June 2012. (Compl. ¶¶ 26-27.)

other employees received bonuses that Plaintiffs did not receive. Because Plaintiffs received no bonus, such discovery could only be designed to support an argument that Plaintiffs are entitled to some amount of bonus above $0, thus supporting an argument that the amount in controversy is *greater*, rather than lower, as Plaintiffs must argue to support remand.

Plaintiffs' subpoenas also represent an improper attempt to obtain as much discovery as possible before they are compelled to arbitrate this case in a forum with far less liberal discovery rules. As the Court is aware, Frawley has a pending Motion to Compel Arbitration before this Court, which seeks to enforce Plaintiffs' agreements to arbitrate their claims before FINRA. Allowing Plaintiffs to obtain the sweeping discovery they now seek would circumvent the FINRA Rules (which, for example, typically do not allow depositions), undermine the strong policy reasons favoring arbitration, and disregard the limited jurisdiction in which the Court presently sits during the pendency of the parties' jurisdictional motions.

## Conclusion

For the reasons stated herein, Defendant Frawley respectfully requests the Court enter a protective order prohibiting Plaintiffs from seeking third-party discovery until the resolution of the parties' jurisdictional motions.

DATED: November 13, 2015          Respectfully submitted,

/s/ J Matthew Haws

Arthur W. Hahn
Dawn M. Canty
J Matthew Haws
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661
(312) 902-5200
*Attorneys for Defendant Michael Frawley*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of November 2015, I did cause a copy of the foregoing ***Defendant Frawley's Memorandum in Support of His Motion For Protective Order*** to be served upon the following:

>Cornelius E. McKnight
>Nathan P. Karlsgodt
>MCKNIGHT, KITZINGER & PRAVDIC, LLC
>117 North Jefferson Street, Suite 301
>Chicago, Illinois 60661
>312.463.9400
>nmcknight@mkplawyers.com
>
>Gary Prish
>Société Genéralé
>245 Park Ave
>New York, NY 10167
>gary.prish@sgcib.com

/s/ J Matthew Haws
One of Defendant's Attorneys
