**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS WEBB and<br>THAD BEVERSDORF, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL FRAWLEY, | ) | No. 1:15-cv-06406 |
| | ) | |
| Defendant. | ) | Judge Samuel Der-Yeghiayan |
| | ) | Magistrate Judge Maria Valdez |
| v. | ) | |
| | ) | |
| JEFFERIES LLC, | ) | |
| | ) | |
| Respondent in Discovery | ) | |

**DEFENDANT MICHAEL FRAWLEY'S SUPPLEMENTAL MEMORANDUM
IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

Pursuant to this Court's October 29, 2015 Order, Defendant Michael Frawley ("Frawley"), by and through undersigned counsel, Katten Muchin Rosenman LLP, respectfully submits this supplemental memorandum in opposition to Plaintiffs' Motion to Remand. (*See* Dkt. # 18, 23.)

**PROCEDURAL HISTORY**

On July 22, 2015, Frawley timely removed this action based on diversity of citizenship. (Dkt. #1.) In his Notice of Removal, Frawley included, as required, "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). (Dkt. #1 ¶ 8.) On August 21, 2015, Plaintiffs moved to remand. (Dkt. # 15.) Plaintiffs did not dispute that they each are seeking in excess of $75,000, but instead argued that Frawley should have submitted evidence to support his Notice of Removal. (*See id.* at ¶ 19.) That position was flat wrong, as it conflicts with the Supreme

Court's holding in *Dart Cherokee*. Without ruling on Plaintiffs' motion, however, the Court granted the parties leave to take "limited discovery as it relates to jurisdiction/amount in controversy" and file a supplemental memorandum with the Court. (Dkt. # 23.)

In accordance with the Court's Order, Frawley served targeted Requests to Admit and Interrogatories on each Plaintiff, specifically directed to the amount each put in controversy by their claims. In response, Plaintiffs once again refused to contest or admit that the minimum amount in controversy is met, dubiously claiming that they lack sufficient information to predict whether they seek in excess of $75,000:

**Request to Admit No. 6**. Admit that, as of the time you filed your Complaint, you believed that Defendant Frawley caused you to suffer damages in excess of $75,000.

**Amended Response.** Denied, as I had not formed a belief on the amount of damages Mr. Frawley caused because I have no access to the documents and information that would establish all of the reasons Jefferies decided to terminate my employment. In addition, I do not have access to documentation and information that would establish if other employees who were terminated without cause earned bonuses or were eligible for severance or termination payments.

**Request to Admit No. 7.** Admit that the damages you allegedly suffered as a result of the loss of your employment, business reputation and commissions, as set forth in Count II ¶ 69 of the Complaint, do not exceed $75,000.

**Response.** I cannot truthfully admit or deny this request, as I have no access to the documents and information that would establish all of the reasons Jefferies decided to terminate my employment. In addition, I do not have access to documentation and information that would establish if other employees who were terminated without cause earned bonuses or were eligible for severance or termination payments. I have made reasonable inquiry and that [sic] the information I know or can readily obtain is insufficient to enable me to admit or deny.

**Request to Admit No. 8.** Admit that you do not contest that the amount in controversy for your claims against Defendant Frawley exceeds $75,000.

**Amended Response.** Denied, as I have no access to the documents and information that would establish all of the reasons Jefferies decided to terminate my employment. In addition, I do not have access to documentation and information that would establish if other employees who were terminated without cause earned bonuses or were eligible for severance or termination payments. I

2

have made reasonable inquiry and that [sic] the information I know or can readily obtain is insufficient to enable me to admit or deny.

(Exhibit 1, Beversdorf Amended Responses to RFAs; Exhibit 2, Beversdorf Responses to RFAs; Exhibit 3, Webb Amended Responses to RFAs; Exhibit 4, Webb Responses to RFAs.)[1]

Plaintiffs' answers to Frawley's Interrogatories are similarly nonresponsive:

**Interrogatory No. 3**. As of the date you filed your Complaint, identify the total amount of salary you alleged you lost as a result of (i) Defendant Frawley's alleged tortious interference with the letter agreement dated June 4, 2012, attached hereto as Exhibit B . . .; and (ii) Defendant Frawley's alleged fraud.

**Answer.** Unknown. However, Plaintiff is aware that other Newedge employees were later hired and terminated by Jefferies without cause were offer termination packages. Plaintiff is unaware of the value of those packages; however, Plaintiff believes that he may have been eligible for a similar package had he not been terminated for cause. Plaintiff is also aware that most, if not all, former Newedge employees hired by Jefferies were ultimately terminated. Plaintiff is not privy to why, when and how the terminations were implemented or first decided by Jefferies.

**Interrogatory No. 5.** As of the date you filed your Complaint, identify any monetary loss you allege you have incurred as a result of the alleged injury to your business reputation as a result of (i) Defendant Frawley's alleged tortious interference . . .; and (ii) Defendant Frawley's alleged fraud.

**Answer.** Unknown. However, Plaintiff is aware that he sought employment in the financial industry in positions for which he was qualified, he was repeatedly turned away and not offered positions. If Jefferies reported to these prospective employers that Plaintiff was terminated for cause then the Plaintiff's effort to obtain employment may have been related to Mr. Frawley's actions. However, the Plaintiff is unaware of the nature of the communications between Jefferies and any of his prospective employers. This information is in the possession of Jefferies.

**Interrogatory No. 3**. Do you contend that it is impossible for you to recover in excess of $75,000? If so, state the basis therefore.

**Answer.** Unknown, see answer to interrogatories 3, 4, and 5.

---

[1] Plaintiffs initial responses to Frawley's Requests to Admit Facts were insufficient, including claims that they lacked access to information when the question sought information exclusively within their possession. (*See*, *e.g.*, Ex. 2, Nos. 6, 8.) The parties met and conferred regarding Plaintiffs' inadequate responses, resulting in Plaintiffs' agreement to amend some of their responses. The amended responses were essentially the same. (*See*, *e.g.*, Ex. 1, Nos. 6, 8.)

(*See* Exhibit 5, Beversdorf Answers to Interrogatories; Exhibit 6, Webb Answers to Interrogatories.)[2]

Plaintiffs served no discovery upon Frawley, instead issuing three subpoenas to non-parties, ostensibly to learn from these third parties information that would inform the Plaintiffs the amount **they** put in controversy in the Complaint. Those subpoenas are the subject of Frawley's pending motion for the entry of a protective order as to all three subpoenas and Jefferies LLC's ("Jefferies") motion to quash the subpoena served upon it. (*See* Dkt. # 24, 26, 29-30.) As set forth in those motions, Plaintiffs' discovery on third parties is pre-textual. Plaintiffs do not need the broad discovery requested by the subpoenas to simply admit or deny that they each seek damages in excess of $75,000. In fact, much of this discovery relates to categories of damages which were not alleged in the Complaint (*e.g.*, unpaid severance), so this evidence could only serve to increase, not decrease, the amount in controversy, further justifying removal rather than supporting remand. (*See, e.g.*, Dkt. # 26-1, Request Nos. 8-10.)

Nevertheless, Plaintiffs' pleadings and responses to Frawley's discovery are more than sufficient to defeat their motion to remand and demonstrate that the jurisdictional minimum is met. Indeed, Plaintiffs' refusal to admit that they do not each seek damages in excess of $75,000 leads inescapably to the precise inference that defeats their motion to remand—*i.e.,* that their claims (if proven) could be worth more. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006); *Workman v. United Parcel Service, Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000). As such, Plaintiffs' Motion to Remand should be denied.

---

[2] Frawley served interrogatories on Plaintiffs on November 11, 2015. Plaintiffs' responses were due December 10, 2015. Despite numerous representations that Plaintiffs' answers were immediately forthcoming, Plaintiffs appeared to struggle, and did not answer Frawley's interrogatories until January 9, 2015, a full month late.

**ARGUMENT**

### A.    Frawley Has Plausibly Alleged that the Amount in Controversy Exceeds $75,000.

The allegations in the Complaint (and the documents incorporated therein) demonstrate that the amount-in-controversy threshold is met. Plaintiffs' claims against Frawley arise out of their employment as sales executives with the metals trading group at Jefferies. In general, Plaintiffs allege that Frawley, their supervisor at Jefferies, encouraged them to pursue certain iron ore trades on behalf of Jefferies despite Jefferies' decision to discontinue trading in the iron ore market. (Compl. at ¶¶ 41–45.)[3] As a result, Plaintiffs allege that they were injured in a variety of ways, including the loss of commissions on more profitable trades, injury to their business reputations and ultimately the loss of their jobs at Jefferies. (*Id.* at ¶¶ 69, 72.)

Plaintiffs assert two causes of action: (1) tortious interference with contract, and (2) common law fraud. Plaintiffs' tortious interference with contract claims allege that Frawley intentionally interfered with each Plaintiff's employment contract with Jefferies, resulting in the "loss of his employment, business reputation and commissions." Plaintiffs' agreements, which are incorporated by reference in this Count, (*id.* at ¶ 65), provide that Plaintiff Webb was entitled to a yearly salary of $175,000 and Plaintiff Beversdorf was entitled to a yearly salary of $250,000 (and both had the potential to earn additional bonuses). (*See* Dkt. # 8-1, 8-2.) Plaintiffs allege that as a result of Frawley's alleged tortious interference, they were both fired on October 21, 2013. (*Id.* at ¶¶ 61, 69.) Plaintiffs seek damages for an unspecified amount "in excess of $50,000" with respect to their tortious interference with contract claims. (*Id.* at ¶ 69.)

---

[3] The alleged facts are taken from Plaintiffs' Complaint. Frawley does not admit or adopt these allegations.

5

The fact that Plaintiffs' agreements with Jefferies provided them with annual salaries of $175,000 and $250,000, respectively, establishes that Plaintiffs' tortious interference with contract claims seek in excess of $75,000, as such amount would cover less than half a year's salary for each. (*See* Dkt. # 8-1, 8-2.) Plaintiffs admit, as they must, that they blame Frawley for their terminations from Jefferies (although Frawley was no longer employed by Jefferies when they were terminated), where Beversdorf was paid $10,416.67 every two weeks and Webb was paid $7,291.67 every two weeks. (*See* Ex. 1, No. 3; Ex. 3, No. 3.) Plaintiffs' claims for damages in connection with their terminations make it abundantly clear that each Plaintiff's allegations put at issue more than $75,000. (*Id*. ¶¶ 69, 72.) *See, e.g.*, *Epstein v. Target Corp.*, 2007 WL 551552, at *2 (N.D. Ill. Feb. 15, 2007) (for purposes of determining the amount in controversy, a reasonable estimation for back pay is "what a plaintiff would have earned from the time her employment ended until trial"). As such, Frawley has demonstrated facts that make plausible his allegation that the jurisdictional amount-in-controversy requirement is met.

But that is not all. Plaintiffs also plead fraud claims, alleging that in reliance on Frawley's representations they abandoned more lucrative trading activities at Jefferies to pursue iron ore trades, which turned out to be fruitless. (*Id*. at ¶ 72.) They seek to recover commissions they would have earned while they were still employed by Jefferies on these "other transactions that were profitable to Jefferies and that would have earned [them] commissions . . . ." (*Id*.)[4] Putting aside that Plaintiffs were not paid on commission, these claims seek damages of an unspecified amount "in excess of $50,000" as well as attorneys' fees. (*Id*. at ¶ 74.)

---

[4] The commissions sought on Plaintiffs' fraud claims (for trades that Plaintiffs allegedly would have arranged during their employment at Jefferies) are distinct from the commissions sought on Plaintiffs' tortious interference claims (for trades that Plaintiffs allegedly would have arranged had their employment with Jefferies continued).

Plaintiffs' fraud and tortious interference claims, which each seek "in excess of $50,000," may be aggregated to satisfy the minimum amount in controversy. These claims are not pled as merely claims for duplicative relief for which aggregation is prohibited. (Dkt. # 15, Pls. Mot. at ¶¶ 15-16.) Plaintiffs claim separate damages on their fraud claims—*i.e.*, the commissions that they speculate they would have made on "other transactions" while they were still employed at Jefferies, as well as attorneys' fees. (Compl. at ¶¶ 72, 74). In *Herreman v. Carrera Designs*, the court held that, "[t]he diversity statute confers federal jurisdiction over 'civil actions' satisfying the required minimum amount in controversy, 28 U.S.C. § 1332(a), not over counts, thus permitting [a] plaintiff to aggregate the *stakes* in . . . separate claims or counts to come up to the minimum." 157 F.3d 1118, 1121 (7th Cir. 1998) (emphasis added). Because each Plaintiff's fraud claim increases the stakes of the litigation by the value of the allegedly lost commissions and attorneys' fees, that claim may be aggregated to reach the minimum jurisdictional amount.[5] *See, id.*; *e.g.*, *Connolly v. Volvo Trucks N. Am., Inc.*, 208 F.R.D. 600, 601 (N.D. Ill. 2002) (aggregating the "in excess of $50,000" *ad damnum* of plaintiff's three claims arising out of the same set of facts because each claim asserted its own basis for compensation); *Skrzpek v. New York Life Ins. Co.*, No. 99 C 6774, 2000 WL 28263, at *1 (N.D. Ill. Jan. 12, 2000) (aggregating breach of contract claim with statutory claims seeking additional attorneys' fees, penalties and interest).

---

[5] Frawley attempted to obtain the estimated value of these commissions and attorneys' fees from Plaintiffs in discovery, but Plaintiffs evaded response. Answering an interrogatory that explored the extent of lost commissions, each responded: "Unknown," along with a lengthy recitation of his lack of access to information concerning commissions other Jefferies' employees may have been paid. (Ex. 5, No. 4; Ex. 6, No. 4.) Similarly, with regard to attorneys' fees, each Plaintiff responded: "Objection to form as my attorneys have represented me in other matters to which this interrogatory may apply. In addition, the interrogatory calls for attorney client privileged information and attorney work product." (Ex. 5, No. 7; Ex. 6, No. 7.) These objections lack merit. The amount of fees incurred by Plaintiffs is not privileged and the interrogatory seeks only fees relating to this matter, not other matters.

Despite Plaintiffs' failure to comply with the limited jurisdictional discovery permitted by the Court, it is clear from face of Plaintiffs' Complaint that each seeks in excess of $75,000.

### B. Plaintiffs' Refusal to Admit They Each Seek Damages of Less Than $75,000 from Frawley Creates An Inference That Their Claims Are Worth More.

Courts simply do not tolerate the type of cat-and-mouse game Plaintiffs have attempted to play here. Indeed, Plaintiffs' Motion to Remand was ill-conceived from the outset. In the motion itself Plaintiffs argued, without acknowledging or distinguishing contrary Supreme Court precedent, that Frawley was required to submit evidence establishing that the amount in controversy exceeds $75,000. (*See* Dkt. # 15, Pls. Mot. ¶ 19.) In *Dart Cherokee*, the Supreme Court rejected this argument and instructed that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee,* 135 S. Ct. at 554; *see also Blomberg v. Service Corp. Intern.*, 639 F.3d 761 (7th Cir. 2011) (the removing party's burden "is a pleading requirement, not a demand for proof"). More importantly, given Frawley's plausible allegation that the amount in controversy exceeds $75,000, Plaintiffs can defeat jurisdiction only if "it appears to a <u>legal certainty</u> that the claim is really for less than the jurisdictional amount." *Oshana*, 472 F.3d at 511 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938)) (emphasis added). Courts may find this legal certainty where a plaintiff stipulates that he will not seek damages in excess of $75,000 or where damages are statutorily capped. *See id.* at 506 ("If Oshana really wanted to prevent removal, she should have stipulated to damages not exceeding the $75,000 jurisdictional limit"). This is not such a case. Here, Plaintiffs assert tort claims where damages are uncapped. And, despite discovery into this very issue, Plaintiffs refuse to admit that they do not seek damages in excess of $75,000. (*See* Ex. 1, Nos. 8-9; Ex. 3, Nos. 8-9; Ex. 5, Nos. 8-9; Ex. 6, Nos. 8-9.)

Plaintiffs' repeated claims that they were "unaware of the value" of their claims or "had not formed a belief on the amount of damages" at the time they filed their complaint merit no consideration. (Ex. 1, Nos. 6-8; Ex. 3, Nos. 6-8.) "Whether damages will exceed $75,000 is not a fact but a prediction." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006) (suggesting contention interrogatories and admissions as a means to discover from the plaintiff what he seeks). The Plaintiffs, as the master of their complaint, are in the best position to predict the value of their claims and cannot maintain their motion to remand without contesting the jurisdictional minimum. *See Shaw v. Down Brands, Inc.*, 994 F.2d 364, 366 (7th Cir. 1993) ("a plaintiff is in the best position to know how much his claim is worth"). Having refused to do so, the Court is left only with Frawley's plausible allegation that the amount in controversy exceeds $75,000, (Dkt. # 1, ¶ 8), which the Court must accept unless it is "legally impossible for [Plaintiffs'] recovery to exceed the minimum." *Meridian*, 441 F.3d at 543 (where jurisdictional allegations are not contested, the court must be "legally certain" that the plaintiff cannot recover greater than $75,000 before it can grant a motion to remand). This "legal certainty" is most often found in cases where damages are capped by statute or contract, not in tort cases, such as this, where damages, if any, are unliquidated and will be determined at trial.

Most critically, under controlling Seventh Circuit precedent, Plaintiffs' refusal to admit that their claims are worth less than $75,000 creates a powerful inference that the amount in controversy is met. *See Oshana*, 472 F.3d at 512 ("if the plaintiff does not stipulate to damages of $75,000 or less, the inference arises that he thinks his claim may be worth more"); *Workman*, 234 F.3d at 1000 (same); *see, e.g.*, *Choudary v. P&G-Clairol, Inc.*, 2008 WL 4779137, at *2–3 (N.D. Ill. Oct. 22, 2008) (denying remand; finding the plaintiff's refusal to stipulate to be "strong evidence" that plaintiff "believed that her claim is worth at least $75,000"); *Resnick v. Gibralter*

*Fin. Corp.*, 2012 WL 4358841, at *6 (S.D. Ind. Sept. 21, 2012) (denying motion to remand where plaintiff refused to stipulate that damages would not exceed $75,000); *Epstein v. Target Corp.*, 2007 WL 551552, at *2 (same); *see also Lundy v. Cilburn Truck Lines, Inc.*, 397 F. Supp. 2d 823, 826 (S.D. Miss. 2005) (denying motion to remand "[b]ased on Plaintiffs' silence on the amount in controversy").

In *Oshana*, the plaintiff expressly disclaimed damages over $75,000 in her state court complaint, but because the plaintiff was not bound by this disclaimer in connection with her motion to remand, the defendants sought her admission that she would not seek individual damages in excess of $75,000.  472 F.3d at 512.  Just like Beversdorf and Webb, she refused to concede this point.  *Id.*  The Seventh Circuit held that the plaintiff's refusal to admit that her recovery would not exceed $75,000 raised the reasonable inference that it would.  *Id.* (citing *Workman*, 234 F.3d at 1000).  Noting the fairness of its result, the Seventh Circuit observed that a plaintiff "cannot benefit by playing a cat-and-mouse game, purporting to disclaim damages in excess of $75,000 but refusing to admit or stipulate that her damages will not exceed that amount."  *Id.* (citing *Rubel v. Pfizer, Inc.*, 361 F.3d 1015, 1020 (7th Cir. 2004)).  The Seventh Circuit went on to note that "[a] contrary result would be unjust.  [Plaintiff] might have returned to state court and after the time had passed for removal, . . . amended her complaint to seek punitive damages and recovered more than $75,000."  *Id.* at 512–13.

Like the plaintiff in *Oshana*, Webb and Beversdorf "cannot have it both ways."  *Id.* at 513.  They "cannot disclaim damages in excess of $75,000 in order to defeat federal jurisdiction but preserve [their] right to recover more than that amount by refusing to admit or stipulate to the jurisdictional limit."  *Id.*  The time has come to put an end to Plaintiffs' cat-and-mouse game and deny the Motion to Remand.

## <u>CONCLUSION</u>

For the reasons stated above and in Frawley's Response in Opposition to Plaintiffs' Motion to Remand, Dkt. # 18, this matter should remain in federal court based on diversity jurisdiction. See 28 U.S.C. 1332(a). Plaintiffs' Motion to Remand should be denied.

DATED: January 19, 2016        Respectfully submitted,

/s/ J Matthew Haws

Arthur W. Hahn
Dawn M. Canty
J Matthew Haws
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661
(312) 902-5200
*Attorneys for Defendant Michael Frawley*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of January 2016, I did cause a copy of the foregoing ***Defendant Michael Frawley's Supplemental Memorandum in Opposition to Plaintiffs' Motion to Remand*** to be filed via the electronic filing system. Notice of filing will be performed by the Court's electronic filing system, and the Parties may access the document through the electronic filing system.

Cornelius E. McKnight
Nathan P. Karlsgodt
MCKNIGHT, KITZINGER & PRAVDIC, LLC
117 North Jefferson Street, Suite 301
Chicago, Illinois 60661
312.463.9400
nmcknight@mkplawyers.com

/s/ J Matthew Haws
One of Defendant's Attorneys